Susan Norris & another, in equity, *vs.* Betsey A. Laberee & another.

*Conveyance of land in consideration of service to be rendered by grantee.*
*Reforming deed—mistake of law—effect of deed.*

M. L. conveyed land, by deed of warranty, to his father, S. L., conditioned that, if the grantor "maintained and supported" S. L. and wife, and paid his sister S. three hundred dollars, the deed should be void.  Subsequently, M. L. having died without issue, the land descended to S. L., who thereupon conveyed it to his other son, M., by deed of quitclaim, "in consideration of the conditions to be performed for me and mine by" M., "agreeably to the deed of the late M. L. to me;" the acceptance of the latter deed rendered M. personally liable to perform the conditions mentioned, but created no lien upon the land.

In such case, the deed having been made as the parties intended, without any wrongful insertions or negligent omissions, a court of equity will not after twenty years, interfere to reform it, so that it will have the legal effect expected.

Nor to cancel a deed, alleged to be fraudulent, on the prayer of one having no interest in the land thus conveyed.

BILL IN EQUITY.

The bill substantially alleged that Seth Laberee, one of the complainants, on Feb. 14, 1842, caused one Goud to convey to one Miles Laberee, son of said Seth, a farm worth $4000, and in consideration of which conveyance, Miles conveyed the same to Seth, upon the condition that the said deed should be void " if the said Miles should well and truly find, provide for, and maintain and support my father, the said Seth Laberee, and his mother, Susan Laberee, or such other who may ever be his lawful wife, during each of their natural lives in such a relation, to the end thereof, with all things reasonable, necessary, and comfortable for such their several support, at his own charges, in both sickness and health ; and should grant to them or either of them, as the case may be, such accommodation for their own respective use and occupancy in the dwelling-house upon the premises aforesaid, as shall be equal to one-half of the same in all the privileges and appurtenances thereto belonging, for their own personal domestic use ; and should always keep and provide for his or their use, at their reasonable command, or either of them, a good and suitable horse, with a carriage or carriages, as may be convenient and practicable, for their personal use at all times ; and should also find and provide a home and maintenance for his sister, Susan Laberee, the other complainant, as usual, with her parents, while she may live in single life or become an orphan, until the time of her possible marriage, and, upon the event of such marriage, should well and truly pay to her, the said Susan, as her out-fit in discharge of all legal claim upon my father, or his estate, as an heir-at-law, the full sum of three hundred dollars in cash, or in articles of that value ; " that said conveyance created an equitable lien on the premises in behalf of the said Seth and wife for a life-estate, and for the oratrix Susan, to the amount of $300, which had never been paid or discharged ; that in September, 1847, Miles deceased without heirs of his body, and the property descended to his father, Seth, subject to the equitable lien of the complainant Susan ; that upon the death of Miles, Seth undertook to enter into similar arrangements, and of the same legal effect as

the foregoing, with his only surviving son, Myrick, and in pursuance thereof, in April, 1849, he executed and recorded a deed of the premises to Myrick, in which it was recited to be " in consideration of the conditions to be performed for me and mine by Myrick Laberee, agreeably to the deed of the late Miles Laberee, deceased, to me, the said Seth Laberee, bearing date Feb. 14, 1842 ; " that he was advised by the scrivener, well versed in the law, that said latter deed was of the same nature and legal effect as the former, and as it was intended to be ; that he intended said deed to be, and fully believed it was of the same legal effect, when he executed it, as the deed of said Miles, and that it secured to him, wife, and daughter Susan, all the rights and benefits secured to them by the conditions of the deed from Miles, and that the same was a deed of maintenance, and subject to forfeiture, and that he should not otherwise have executed it without consideration ; that neither said Myrick nor Miles ever paid $300, and said Myrick in his lifetime never claimed or believed that he had other than a conditional title to said premises, holding the same in trust subject to the conditions mentioned in the deed from said Miles ; that the complainants so believed until the court so adjudged.

The bill further alleged, that the deed to Myrick was never actually delivered to him in his lifetime ; that said Myrick abandoned any title to said premises, and surrendered the premises to said Seth, whereupon the said Seth assisted said Myrick in purchasing other premises, upon which Myrick moved, and ceased to claim any rights under said conveyance, and never afterward offered to fulfill any of the conditions or trusts imposed on said Miles, after which abandonment, the said Seth went into full possession, and so continued until the death of his wife, when he leased the premises to said Myrick, under which arrangement said Myrick was in possession until his decease in May, 1862, whereupon Betsey A. Laberee was appointed administratrix on his estate ; that said Betsey, and one J. M. Carleton, her attorney, contriving to injure and defraud the complainants, instituted criminal proceedings against the said Seth for willful trespass, for cultivating the premises as he had been

accustomed to for forty years, and thereon imprisoned the said Seth for a long time, for offenses of which they knew he was innocent; that from want of means to defend, said Seth was obliged to surrender possession of said premises to the defendants; that further contriving to injure and defraud the complainants, the defendants procured a license from the probate court for said county to said Betsey, administratrix as aforesaid, under pretense that there was not other property belonging to the estate of said Myrick sufficient to pay his debts, and by said license, while the title thereto was in litigation, sold the same to said Carleton for $500, although there was other property sufficient and available for the payment of said debts; that said Betsey and Carleton shared the benefits derived from said sale, they well knowing all the premises herein set forth. That the profits of said premises have yearly netted $500, which the defendants have converted to their own use, and have refused to pay or secure anything to the complainants; that they have sold from the premises $2500 worth of property.

Prayer for a decree that the defendants pay over all the moneys, and secure to the complainants and each of them, all the rights and benefits reserved and secured to them in and by virtue of the deed from Miles; that the deed from said Seth to said Myrick be cancelled and declared void, and also the deed from said Betsey to said Carleton; or to reform the deed from said Seth to said Myrick, in accordance with the intentions of the parties.

The bill was duly signed and sworn to, March 22, 1869; served, returned, and filed April term, 1869.

October term, 1869, defendants filed general demurrer, which was duly joined.

*A. G. Stinchfield*, for the complainants.

No adequate remedy at law. *Laberee* v. *Carleton*, 53 Maine, 211; *Jameson* v. *Hapgood*, 7 Pick. 8. But when defendant is bound to account, jurisdiction will be taken, though the plaintiff have a remedy at law. *Hobart* v. *Andrews*, 21 Pick. 526; *First Cong. Soc.* v. *Trustees, &c.*, 23 Pick. 148.

Deed of April, 1849, created a trust, and the failure to furnish support and pay the money as by conditions in deed of Feb. 14, 1842, by Myrick, the repudiation of the trusts by him and his administratrix, and sale of the estate to Carleton, worked a forfeiture, and the estate reverted to the one creating the trust.

No particular mode of expression is requisite for the purpose of raising a trust. 4 Kent's Com. 304.

The complainants have an equitable interest by virtue of the conveyances, which constitute a trust. *Bugbee* v. *Sargent*, 23 Maine, 270; *Pratt* v. *Thornton*, 28 Maine, 360; *Pike* v. *Collins*, 33 Maine, 38, 47; *Rawson* v. *Uxbridge*, 7 Allen, 130.

The deed of February, 1842, is incorporated into the deed of April, 1849, and all the rights secured by it to the complainants, go with it into the latter.

Trusts embrace all obligations which, *ex æquo et bono*, a party ought to perform, and when there is no legal remedy. 2 Story on Eq. 230; 4 Kent's Com. 312. See, also, *Bryant* v. *Russell*, 23 Pick. 521; 4 Kent's Com. 308; 2 Washb. on Real Prop. 134 (*n*).

The intent and design of the grantor, and not words, are the principal things in a deed. *Linscott* v. *Buck*, 33 Maine, 534; *Bryant* v. *Russell*, *supra*.

The trust having been repudiated, the trust estate reverts, and the court may decree a reconveyance. *Hanley* v. *Sprague*, 20 Maine, 431; 2 Story's Eq. Jur., §§ 979, 1196, n., 1197, 1198, 1200.

In taking the deed, Myrick assumed the trust. *Nugent* v. *Riley*, 1 Met. 117, 120; *Newell* v. *Hill*, 2 Met. 180; *Carter* v. *Carter*, 14 Pick. 428.

The record of a trust deed is notice to all subsequent purchasers. R. S., c. 73, § 12.

A conveyance may be decreed directly from Carleton to Seth Laberee, with proper covenants. *Buck* v. *Swazey*, 31 Maine, 41; *Dwinal* v. *Vesey*, 32 Maine, 509.

2. Or the deed of April, 1849, may be reformed by the insertion of the conditions imposed on Miles in the deed to Myrick, after the

covenants, which was clearly the intention of the parties. *Simpson* v. *Vaughan*, 2 Atk. 31 ; *Langley* v. *Brown*, 2 Atk. 203 ; *Ball* v. *Storer*, 1 Sim. & S. 210 ; *Keisselback* v. *Livingstone*, 4 J. C. R. 144.

To the same effect are *Sanford* v. *Washburn*, 2 Root, 499 ; *Peterson* v. *Grover*, 20 Maine, 363 ; *Davis* v. *Rogers*, 33 Maine, 222 ; *Wiser* v. *Blackly*, 1 J. C. R. 607 ; *Gillespie* v. *Moon*, 2 J. C. R. 585 ; 1 Story's Eq. Jur., §§ 97, 112, 115, 143, 155, 160, 162, 166, 168 ; 1 Pet. 12.

*A. P. Gould*, for the defendants.

Appleton, C. J.  On 14th Feb., 1842, Miles Laberee conveyed the farm, which constitutes the subject-matter in controversy, to his father, Seth Laberee, in mortgage, conditioned to support him and his wife during their natural lives, and to pay three hundred dollars to their daughter, Susan Laberee.

Miles Laberee died childless, 22d Sept., 1847, and the estate descended to his father.

On the 10th April, 1849, Seth Laberee, " in consideration of the conditions to be performed for me and mine by Myrick Laberee, . . . agreeably to the deed of the late Miles Laberee, deceased, to me, the said Seth Laberee, bearing date the 14th Feb., 1842," etc., conveyed the premises, described in the last-mentioned deed, to Myrick Laberee. This placed the title in him of the estate discharged of all conditions. *Laberee* v. *Carleton*, 53 Maine, 211.

If there was a contract made by Myrick with his father to perform what is specified as the consideration of the deed to the former, the remedy for its non-performance would be by suit upon such contract, precisely as it would have been on a note of hand, if one had been given for the premises conveyed. If there was no written contract, yet the grantee would be held liable. When land is conveyed by deed-poll, with a reservation or provision that the grantee shall perform a certain service for the benefit of the grantor, and the grantee accepts the deed, he is bound to perform the service. *Newell* v. *Hill*, 2 Met. 180. An action in assumpsit may,

in such case, be maintained upon the implied promise arising from the acceptance of the deed. *Goodwin* v. *Gilbert*, 9 Mass. 510; *Nugent* v. *Riley*, 1 Met. 121; *Maine* v. *Cumston*, 98 Mass. 317. But the contract, whether express or implied, whether to render a service or to pay a sum of money, is a mere personal contract of the party thereby liable. No lien is imposed upon the estate by way of security for the performance of whatever may constitute the consideration of the estate conveyed.

It was, undoubtedly, the expectation of all parties, when this deed was given, that Myrick would on his part perform what in his deed is stated as the consideration thereof. So a mortgage back should have been given as security for the performance of what was impliedly or expressly promised to be performed. This was neglected from a mistake of law in the construction of the deed to Myrick. This bill is now brought to correct this mistake, by altering the terms of the deed, or enforcing a reconveyance of the estate. But there was no fraud nor deceit practiced upon Seth Laberee when he made his deed to his son Myrick. There was no wrongful insertion or negligent omission of words. It was made as the parties intended it should be, but its legal effect was different from what they expected. The general rule in equity is that ignorance of the law shall not affect agreements nor excuse parties from the legal consequence of their acts.

The deed sought to be reformed on the ground of mistake was made and delivered 10th April, 1849. This bill was filed April term, 1869, so that twenty years had elapsed before the grantee sought the correction of the alleged mistake. In the mean time the grantee had deceased, and the very estate in controversy had been sold, by order of the judge of probate, to pay the debts of its owner. After so great laches, it is too late to expect the aid of a court of equity to cure the neglects and correct the mistakes of a party asking its intervention, if this were a case where it could be had.

By R. S., 1857, c. 73, § 11, "There can be no trust concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing signed by the party or his attorney." But here was no writing signed by the party to be

charged, and consequently no trust in writing contemplated by this section.

The bill alleges the deed to Myrick was never delivered, if so, no reason is perceived why the grantee might not enforce his rights at law.

As the complainants have no interest in the estate of Myrick, they cannot ask for the cancellation of the deed from the administratrix of his estate to Carleton. If there has been fraud in the settlement of that estate, its correction must be sought in the probate court. The complainants fail to show in their bill any ground for the interference of a court of equity.

*Demurrer sustained.*

*Bill dismissed—without costs.*

CUTTING, KENT, DICKERSON, BARROWS, and TAPLEY, JJ., concurred.