## JOHN KENNEDY *vs.* LOUISA P. OWEN.

Franklin. Sept. 18, 1883. — Jan. 7, 1884. FIELD & W. ALLEN, JJ.,
absent.

A stipulation in a deed poll, that the grantee, his heirs and assigns, shall make and maintain a fence between the granted premises and adjoining land of the grantor, is not a covenant, and will not sustain an action by a subsequent grantee of the adjoining land against a purchaser from the grantee in the deed poll.

CONTRACT. The declaration alleged that the plaintiff, on July 31, 1880, was the owner in fee and occupant of a certain tract of improved land in Greenfield; that the defendant was the owner in fee and occupant of an adjoining tract of improved land; that both of these tracts of land were formerly one undivided lot, of which one Harding G. Woodard was seised in fee; that Woodard, on July 18, 1868, conveyed to one Jesse A. Coombs the defendant's land, by a deed duly recorded and containing the following condition : " that the said Coombs, his heirs and assigns, shall make and maintain all fences around the granted premises ; " that afterwards Coombs, under and by virtue of said condition, made and erected a partition fence between the land so conveyed to him and the remaining part of said lot, which is the same as the plaintiff's land; that said fence was kept up and maintained by Coombs while he remained the owner of said land; that on September 7, 1868, Coombs conveyed said land in fee to the defendant, by deed duly recorded and containing the following condition: " that the said Owen is to make and maintain all the fences around the granted premises ; " that Woodard, on February 7, 1870, by deed duly recorded, conveyed in fee the remaining part of said lot, separated by the said fence, to the plaintiff; that, under and by virtue of said condition, the defendant, as owner of said land adjoining the land of the plaintiff, became bound by law to keep up and maintain the fence; that on July 31, 1880, said fence had become ruinous and out of repair by the neglect and refusal of the defendant to maintain the same, though repeatedly requested to do so; and that the fence so remained out of repair and unmaintained, by the defendant's neglect, during the period of the defendant's ownership of said land, and until she

conveyed away her interest therein, on August 14, 1880. Writ dated March 4, 1882.

The defendant demurred to the declaration, on the ground that it set forth no legal cause of action. The Superior Court sustained the demurrer, and ordered judgment for the defendant; and the plaintiff appealed to this court.

*C. G. Delano*, for the plaintiff.

*G. D. Williams*, for the defendant.

C. ALLEN, J. The particular question which is presented by the demurrer in this case is settled by the recent decision in *Martin* v. *Drinan*, 128 Mass. 515, where it was held that a stipulation in a deed poll, that the grantee agreed, for himself, his heirs and assigns, to keep in repair a building on adjoining land of the grantor, was not a covenant, and did not run with the land, and that an assign of the grantor could not maintain an action of contract against the grantee for a failure to perform the agreement. The present action is in form an action of contract, and the plaintiff is a purchaser from, and assign of, the grantor in the deed which contains the stipulation upon which the plaintiff relies, and, under the decision referred to, cannot maintain an action of contract against the grantee in the deed, especially not against the defendant, who is a purchaser from said grantee.

The plaintiff, however, without apparently adverting to the fact that his action is in form an action of contract, has put his argument upon the broader ground that he is in some form entitled to a remedy against the defendant upon the facts stated in his declaration; and we have considered this broader question, which involves an examination of the nature of the right created by the provision of the deed which is set forth, and of the appropriate remedy for a violation of such right.

The plaintiff avers that the deed of the original grantor, Woodard, was " with the condition following, to wit, ' that the said Coombs [the grantee], his heirs and assigns, shall make and maintain all fences around the granted premises; ' " and that the deed from Coombs to the defendant was with a condition substantially similar. The deed itself is not before us, by copy or otherwise, so that we have no opportunity of looking at the language of this special provision, in connection with the

rest of the deed. If the plaintiff's averment were to be taken as showing that the deed conveyed an estate on condition subsequent, the question would arise whether the plaintiff could, in any form, avail himself of a breach of such condition. But it seems more probable that the provision of the deed was not intended to have that effect, and that it was merely designed to express an obligation or undertaking to make and maintain the fences; and such appears to be the construction put upon it by the plaintiff's counsel. See *Ayling* v. *Kramer*, 133 Mass. 12, 13.

It is also clear that the stipulation is not technically a covenant, running with the land. The grantee sealed nothing. In *Parish* v. *Whitney*, 3 Gray, 516, it was held that a stipulation in a deed poll, that the grantee, his heirs and assigns, should erect and perpetually maintain a fence between the land granted and other land of the grantor, did not create an incumbrance on the granted premises, within the meaning of a covenant against incumbrances in a deed subsequently made by the grantee. The court said, that it was not a reservation out of the estate granted, nor a condition, nor a covenant, running with the land, or otherwise; but that it was only a personal agreement of the grantee, evidenced by his acceptance of the deed, which might bind him and his legal representatives, but did not affect the estate. That case was criticised in *Burbank* v. *Pillsbury*, 48 N. H. 475, where it was held that such an agreement was of the same effect as an express covenant, signed and sealed by the grantee; that it would run with the land; that it created an incumbrance upon the land; and by implication it was recognized that a subsequent grantee would be liable to the original grantor in an action of assumpsit on the agreement. No question arose there, or could arise, whether an assignee of the grantor could maintain such action. A decision substantially similar was made in *Kellogg* v. *Robinson*, 6 Vt. 276, where the stipulation was regarded as a covenant, or a condition; and it was held that it created an incumbrance on the land, within the meaning of a covenant against incumbrances.

In *Bronson* v. *Coffin*, 108 Mass. 175, it was held that a formal covenant by the grantor, in a deed of a portion of his land, that he and his heirs and assigns would make and maintain a fence

between the land granted and his remaining land, with a pro-
vision that this covenant should be perpetual and obligatory
upon all persons who should become owners of the land adjoin-
ing to that granted, created an interest in the nature of an
easement, and ran with the land, and created an incumbrance
upon the land, within the meaning of a covenant against incum-
brances in a subsequent deed of such adjoining land; and, in re-
ferring to *Parish* v. *Whitney*, the court, by Mr. Justice Gray,
incidentally remarked, " If that decision can be supported, it
must be as falling within the rules that no easement in or right
affecting real estate can be created by contract of the party,
except by deed, and that an agreement not sealed by the party
who is to perform it cannot create a covenant or run with the
land." The above decisions in New Hampshire and Vermont
were cited and commented upon.

In the later case of *Martin* v. *Drinan*, as has been seen, it was
explicitly held by this court, in an opinion delivered by Chief
Justice Gray, that such an agreement, implied or shown by the
acceptance of a deed poll, is not a covenant; and *Parish* v. *Whit-
ney* was cited, with apparently a full approval of the decision.
It is plain that an agreement not under seal cannot, technically
speaking, run with the land.

It is however true, that agreements may be, and often are,
entered into by owners of land, which create an equitable right
or interest therein, and which a court of equity will sometimes
enforce against subsequent purchasers with notice. The plaintiff
in his argument goes somewhat further than this, and con-
tends that the effect of the stipulation was to create an ease-
ment by reservation, in which case it would be limited to the
grantor's life, there being no words to extend it beyond that
time. The same question was substantially involved in *Parish*
v. *Whitney*, and it was there distinctly declared by the court
that the clause in question was not a reservation out of the
estate granted. It had previously been held, by a decision then
recent, which departed from the course of decisions in Eng-
land, that an easement of the ordinary kind, such as a right of
way, may be created by means of a reservation, which would
operate as an exception. *Bowen* v. *Conner*, 6 Cush. 132. It
was also the law of this Commonwealth, that an obligation of

an owner of land to fence against land adjoining might be established by prescription, and, if so established, would be a charge upon his land; and the corresponding right of the owner of the adjoining land to have the fence maintained was recognized as in the nature of an easement. See cases cited in *Bronson* v. *Coffin*, 108 Mass. 185. But it has never been held or considered in Massachusetts, so far as we are aware, that a stipulation like that contained in the deeds on which the plaintiff relies would have the effect to create an easement of this peculiar description, the right to which could be asserted or protected by an action at law. It certainly is not an exception out of the estate granted. It is not strictly a reservation. It appears to be rather a mere personal obligation, imposed upon and assumed by the grantee, and binding upon him and his legal representatives as an implied contract entered into with the grantor; not amounting to a covenant, or a charge upon the land; but an obligation, which, if enforceable at all against purchasers, is to be enforced against them by a court of equity alone, and having no more force and effect than in case of an express agreement not under seal between two owners of adjoining land. Instances are numerous where agreements merely restrictive as to the use of land have been enforced against subsequent purchasers with notice. *Peck* v. *Conway*, 119 Mass. 546. *Parker* v. *Nightingale*, 6 Allen, 341. Agreements calling for the performance of affirmative acts, and especially of such as would be a burden upon the land, and could be enforced against it, have also been in like manner enforced in equity, against subsequent purchasers; and it is not necessary here to determine what limitations, if any, should be put upon the exercise of the discretion of a court of equity in this respect; a point concerning which there has been some difference of opinion. See *Tulk* v. *Moxhay*, 2 Phil. 774; *Cooke* v. *Chilcott*, 3 Ch. D. 694; *Morland* v. *Cook*, L. R. 6 Eq. 252; *Wilson* v. *Furness Railway*, L. R. 9 Eq. 28; *Haywood* v. *Brunswick Permanent Benefit Building Society*, 8 Q. B. D. 403; *London & South Western Railway* v. *Gomm*, 20 Ch. D. 562.

Being of the opinion, for these reasons, that the judgment of the Superior Court must be affirmed, we do not enter upon the consideration of the grave question, whether, even upon the

assumption that an easement of this peculiar nature was created by the deed, the plaintiff has a remedy, either at law or in equity, against the defendant, who conveyed away her interest in the premises about two years before the action was brought; there being no averment in the declaration that the plaintiff suffered any actual damage during the time of the defendant's ownership.                                    *Judgment affirmed.*